NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YOLANDA ANDREWS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-04932 (CCC) |
| v. | : | |
| | : | OPINION |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| Defendant. | : | |
| | : | |

**CECCHI**, District Judge.

Yolanda Andrews ("Plaintiff") appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Supplemental Security Income ("SSI") based on disability emanating from arthritis. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff asserts that the record, when considered in full, supports her claims and demands a judgment entitling her to disability insurance benefit payments. Plaintiff maintains that both the Administrative Law Judge ("ALJ") and the Commissioner erred in determining that Plaintiff was not disabled by (1) failing to adequately consider her mental handicaps, (2) improperly evaluating medical evidence from both her treating and independent physicians, (3) placing inappropriate weight on a state agency physician, (4) improperly analyzing Plaintiff's subjective complaints, and (5) failing to obtain the testimony of a vocational expert. For the reasons set forth below, this Court affirms in part the findings of the Administrative Law Judge (ALJ), but remands for the ALJ to set forth his reasons for finding that Petitioner does not have a severe mental health impairment and to utilize a vocational expert, or other similar evidence, in order to determine whether, despite Plaintiff's

impairments, there are jobs that exist in significant numbers in the national economy that claimant can perform.

# I. OVERVIEW

## A. *Procedural History*

On January 3, 2008 Plaintiff filed for SSI and any additional federally administered State supplementation under Title XVI of the Social Security Act alleging disability from January 1, 2005. (R. at 87.)  Plaintiff claimed that the arthritis in her two knees limited her ability to work. *Id.* at 100.  On July 7, 2008 the Social Security Administration notified Plaintiff that her initial claim for SSI was denied due to a lack of disability.  *Id.* at 46-50.  On August 19, 2008 Plaintiff then filed a request for reconsideration that was denied.

Plaintiff then filed for a hearing by an ALJ on December 15, 2008.  *Id.* at 52.  The ALJ heard Plaintiff's appeal on November 3, 2009 holding that Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act.  *Id.* at 11.  On December 21, 2009 Plaintiff's counsel requested a review of the ALJ's November 2009 decision.  *Id.* at 6.  The Office of Disability Adjudication and Reviews Appeals Council found no basis to review the ALJ's decision and denied the request on July 28, 2010.  Plaintiff then initiated the current action against the Social Security Administration in this Court on September 24, 2010 having unsuccessfully pursued all other administrative remedies.  (Compl. at 3.)

## B. *Background*

Plaintiff was born on August 12, 1981, is not married, and never graduated from high school.  (R. at 87, 104.)  Plaintiff has worked inconsistently as a cashier for a variety of proprietors between 1997-2005.  *Id.* at 100.  In this capacity, Plaintiff stocked freezers, worked

as a deli department assistant, and manned the cash register.  *Id.* at 107.  Plaintiff, is currently unemployed, receives food stamps, and cares for her two young children.  *Id.* at 100, 110, 117.

### C. *Plaintiff's Physical Impairments and Treatment*

Plaintiff's primary ailment stems from her arthritic knees that have been continuously examined and treated since July 2006 due to an inability to squat, kneel, or negotiate stairs.  *Id.* at 165, 214; (Compl. at 3.)  A magnetic resonance imaging ("MRI") exam of Plaintiff's left knee has revealed "a small Grade II intrameniscal tear within the posterior horn of the medial meniscus . . . small joint effusion . . . [and] mild chondromalacia patella."  (R. at 165.)  The Plaintiff underwent physical therapy, including the use of braces, and her treating orthopedic surgeon, Dr. Marc Urquhart ("Dr. Urquhart"), identified her as a candidate for arthroscopic surgery for patellar realignment due a "severe risk of osteoarthritis with patellofemoral articulation."  *Id.* at 215.  In October 2006, Dr. Urquhart found further gross instability in the Plaintiff's right knee causing severe chondrosis.  (R. at 213.)

In November 2006, Dr. Urquhart ordered x-ray imaging of both knees.  *Id.* at 209.  Those images showed significant lateral patellar subluxation in the right knee with evidence of significant lateral tilt with similar subluxation in the left knee along with lateral dislocation.  *Id.* Plaintiff successfully underwent left knee arthroscopy and chrondroplasty of the patella along with distal extensor realignment with tibial tubercle anterior medialization, proximal realignment with medial imbrication of the vastus medialis, obliquus, and open lateral release of the extensor mechanism.  *Id.* at 206.  Post-operative treatment involved physical therapy that indicated positive progress.  *Id.* at 204.

In February 2007, Plaintiff's pain was a three or four out of ten, her range of motion was within full limits, and her muscle strength was five out of five.  *Id.* at 166.  She was also meeting

all physical therapy goals. *Id.* In October 2007, Plaintiff exhibited some pain with squatting and climbing stairs. In April 2008, Dr. Urquhart reported the pain severity in Plaintiff's left knee, concentrated in the patella, at a level eight. *Id.* at 198. A treatment plan was prescribed for Plaintiff including engaging in protective activity and wearing a knee brace. *Id.* at 199. Between May – July 2008, Plaintiff underwent three joint injections/aspirations involving the use of Synvisc. *Id.* at 192-94. In September 2008, Dr. Urquhart reported that Plaintiff "continues to have excruciating pain in the left knee despite viscosupplementation injections." *Id.* at 187. At that juncture, he recommended the Plaintiff as a candidate for BioniCare – a medical device that provides electrical stimulation to the knee. *Id.*; (Compl. at 7.)

In November 2008, Plaintiff complained that her left knee had begun to give way. (R. at 186.) At that time, Dr. Urquhart administered a cortisone injection and Plaintiff was told to follow up only as needed. *Id.* On July 17, 2009, Plaintiff underwent left knee arthroscopy, chondroplasty of the patella, and partial lateral meniscectomy, followed by physical therapy. *Id.* at 217. Plaintiff experienced a problem with her right knee in October 2009, when her right knee "gave way." *Id.* at 218. Dr. Urquhart's final diagnosis stated that Plaintiff will need a lateral buttress brace for her right knee, and she will likely be a candidate for knee replacement surgery after all non-operative treatments are exhausted. *Id.*

Following the initiation of her cause of action, several consultative and independent physicians examined Plaintiff. In July 2008, Dr. Anju Rustagi, consulting physician for the Social Security Administration, reported that Plaintiff could independently dress herself, bathe, walk, and use the stairs, although she experienced pain and moved at a slow pace. (R. at 170.) Dr. Rustagi also found that Plaintiff's gait was heel-to-toe with good swing phase and foot clearance. *Id.* She was able to walk on her toes, but could not walk on her heel or squat due to

pain. *Id.* at 170-71. That same month Dr. Deogracias Bustos, a state agency physician, examined Plaintiff's complete medical record and observed that Plaintiff's treatment has been generally conservative with steroid injections. *Id.* at 178. He concluded that Plaintiff could stand and/or walk for at least two hours in an eight hour workday, could frequently lift ten pounds, occasionally twenty pounds, was limited in her push and pull capabilities in her lower extremities, and should never balance, crouch, or crawl. *Id.* at 177-84. Finally, in October 2009, Dr. Salvatore Milazzo, an independent medical examiner, evaluated Plaintiff at the request of her counsel. His report concluded that Plaintiff has a painful range of motion in both knees and will encounter difficulty standing, sitting, walking, navigating stairs or inclines and declines, squatting, or crouching. *Id.* at 227. Dr. Milazzo noted that "anything that requires the use of her knees is problematic, and could be detrimental, in that if the knees give out she can fall. Therefore, heights and balancing are out of the question. Even with her knee braces she has chronic pain." *Id.*

D. ***Plaintiff's Mental Impairments and Treatment***

Plaintiff also suffers from psychological illnesses. In October 2008, Plaintiff sought psychiatric care for anger management. *Id.* at 233. During her intake session with Erika Abate ("Abate"), a licensed social worker, Plaintiff stated that her parents were drug addicts; that her mother died from HIV-complications when Plaintiff was nine years old; and that she is currently estranged from her father. *Id.* Entrusted to the care of her aunt, Plaintiff revealed that her cousin raped her at eight years of age, and she experienced continual beatings until being placed in the foster care system. *Id.* When she was thirteen years old, Plaintiff attempted suicide and received psychological counseling until age fourteen. (R. at 234.) Plaintiff began attending therapy sessions with some regularity at United Family and Children's Society in October 2008. *Id.* at

236-83.  These sessions addressed Plaintiff's anger management problems, encouraging her to express feelings of anger, and explored issues stemming from her childhood trauma.  *Id.* at 236-63.  These sessions took place between October 2008-2009. *Id.*

Plaintiff also regularly consulted a psychiatrist, Dr. Daniel Greenwald ("Dr. Greenwald"), who diagnosed Plaintiff with depression and prescribed Klonopin in January 2009.  *Id.* at 265, 280-82.  From January-August 2010, Dr. Greenwald made several adjustments to Plaintiff's treatment plan prescribing Lexapro, Restoril, Ambien, and Trazodone.  The medical record indicates that Plaintiff believed that several of these medications were not working properly.  *Id.* at 275-83.

E. ***The ALJ's Decision***

The ALJ began by employing the traditional five step analysis for claimants petitioning the Social Security Administration for SSI.  At step one of this analysis, the ALJ found that Plaintiff did not engage in significant gainful activity since her application for SSI on January 3, 2008.  *Id.* at 13.  Here, the ALJ relied upon 20 C.F.R. § 416.971 holding that Plaintiff's employment in shoe sales subsequent to her alleged disability onset date did not rise to the substantial gainful activity level due to its brief duration and cessation due to standing pain. *Id.*

At step two, the ALJ applied 20 C.F.R. § 416.920 evaluating the severity of the disability in light of the evidence presented.  During this analysis, the ALJ determined that Plaintiff has a severe disability as defined by subsection (c) of this statute that mandates that the SSI applicant must be impaired to such an extent that their disability limits their mental and physical ability to perform basic work activities.  20 CFR § 416.920(c).  The court found that the following impairments adversely impacted Plaintiff: her status subsequent to two knee surgeries, osteoarthritis, and obesity. (R. at 13.)

At the third step, the ALJ concluded that the Plaintiff possessed the above severe disabilities, but found that these disabilities did not impair Plaintiff, either on their own or in concert with one another, within the framework of listed impairments in 20 C.F.R. §§ 416.925-926. Here, the ALJ compared Plaintiff's alleged disability with the statute's medical listing for major joint dysfunction under 1.02 of Appendix 1 of § 404. The ALJ made a determination that Plaintiff's disability did not meet the required specified criteria of a "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), as well as findings, by appropriate medically acceptable imaging, of joint space narrowing, bony destruction or ankylosis of the affected joint." (R. at 14.) Additionally, the ALJ found that Plaintiff's evidence did not show that she was affected by the same degree of difficulty in ambulating defined in 1.00(B)(2)(b). Under 1.00 (B)(2)(b)(1), "the inability to ambulate effectively means an extreme limitation of the ability to walk . . . an impairment(s) that interferes very severely with the individual's ability to independently initiate, sustain, or complete activities." *Id.* The ALJ also took Plaintiff's obesity under consideration pursuant to guidelines established in SSR 02-1p. (R. at 14.) This flexible framework indicates that obesity may or may not, in light of the evidence, increase the severity of functional limitations. The ALJ held that Plaintiff's obesity was not an impairment. *Id.*

The ALJ's finding that Plaintiff lacked an impairment at step three necessitated utilizing step four of the SSI analytical framework. Here, the ALJ held that Plaintiff's impairments could "reasonably be expected to cause the alleged symptoms," but that the intensity, persistence, and limiting effects of these impairments were not inconsistent with the results of the court's step three analysis and did not indicate total disability. *Id.* In particular, the court examined Plaintiff's daily functional capabilities concluding that "claimant retains the capacity to function

adequately to perform many basic activities associated with work.   Although claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, . . . the claimant retains the residual functional capacity to perform the exertional demands of sedentary work." *Id.*

With regard to the examination of Dr. Rustagi, the consulting physician for the Social Security Administration, the ALJ stated that "these opinions reflect objective judgments about the nature and severity of the claimant's impairments and resulting limitations . . . the state agency physicians are highly qualified and experts in Social Security disability evaluation." (R. at 15.)  This physician's determination that Plaintiff is able to walk heel to toe and perform daily-living activities independently, albeit with some degree of pain, corroborated objective evidence in Plaintiff's medical record. *Id.* at 16.  The ALJ also highlighted Dr. Milazzo's conclusion that Plaintiff is able to perform sedentary work – with alternating periods of sitting and standing to alleviate any pain.   *Id.* Dr. Milazzo's evaluation provided support for the ALJ's holding that Plaintiff could not undertake physical exertions which required use of her knees or significant weight-bearing. *Id.*

In contrast, the ALJ found Dr. Urquhart's claim that Plaintiff was completely disabled to be inconsistent with evidence in the medical record and the other physicians' reports.   *Id.* Ultimately, the ALJ held that the totality of the evidence supported the conclusion that Plaintiff's ailments do not preclude her from all work activity and, therefore, a finding of total disability would be inappropriate in this case. *Id.*

Finally, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity and found that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform.  20 CFR 416.969 - 416.969(a); (R. at 16.)  First,

under 20 C.F.R. § 416.965, the ALJ determined that Plaintiff could not return to her prior cashier's position because its demands exceeded her residual functional capabilities. (R. at 16.) Instead, the Court concluded that Plaintiff possessed the residual functional capability to perform the full range of sedentary work that led to a final finding of "not disabled" under Medical-Vocational Rule 201.24. *Id.* at 17.

## II. DISCUSSION

### A. *Standard of Review*

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *See Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir.1978)(citations omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)(citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue,* 2009 U.S. Dist. LEXIS 32110, at *7 (M.D.Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.,* 244 Fed. Appx. 475, 479 (3d Cir. 2007)

(citing *Hartranft,* 181 F.3d at 360).   However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz,* 244 Fed. Appx. at 479 (citing *Hargenrader v. Califano,* 575 F.2d 434, 437 (3d Cir.1978)).   Where the Commissioner has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision.   *See Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. *See Curtain v. Harris,* 508 F.Supp. 791, 793 (D.N.J. 1981).   Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927.   Overall, the substantial evidence standard is a deferential standard of review which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence.   *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

### B. *Determining Disability*

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) 1382c(a)(3)(A).   Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other

form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered *exertional* limitations. 20 C.F.R. § 404.1569a; *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000). All other impairments are considered *nonexertional. See Sykes*, 228 F.3d at 263. Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 76, L.Ed.2d 66 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).

The Social Security Administration follows a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation will continue through each step unless it can be determined, at any point, that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263 (3d Cir. 2000). Neither party bears the burden at step three. *Id.* at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).   An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  If the claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of claimant's medical condition, age, education, or work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).   If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.  At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work.  *See Leonardo v. Commissioner of Social Sec.*, Civ. No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

If the claimant does not have a medically determinable severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).  If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment found the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments are the same or equivalent to those listed, the claimant is *per se* disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119 (3d Cir. 2000).  At this point, the ALJ must set forth the reasons for his findings.  *Burnett,* 220 F.3d at 119.  The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence.  *Id.*   Simple conclusory

remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.*

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the claimant's residual functional capacity enables him to perform his past relevant work. 20 C.F.R.§§ 404.1520(a)(4)(iv), 416.920 (a)(4)(iv). This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the capability to perform the past relevant work. *Burnett*, 220 F.3d at 120. The Social Security Administration often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work." *See id.*; 20 C.F.R. § 404.1567. If the claimant can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Social Security Administration Commissioner must show that, based on the claimant's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). During this final step, the burden lies with the government to show that the claimant is not disabled by demonstrating that there is other substantial, gainful work that the claimant could perform, given his age, education, work experience and residual functional capacity. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228

F.3d at 263.   If the Commissioner cannot show there are other jobs for the claimant in the national economy, then the claimant is disabled.     20 C.F.R.   §§   404.1520(a)(4)(iv), 416.920(a)(4)(iv).

## C. *Plaintiff's Arguments on Appeal*

In the instant matter, Plaintiff argues that the ALJ committed six errors that require this Court to reverse the Social Security Commissioner's decision or, in the alternative, to remand the case for reconsideration.   First, Plaintiff asserts that the Commissioner committed reversible error at Step Three by not properly evaluating medical evidence related to Plaintiff's mental impairments.   (Compl. at 19.)   In arguing this point, Plaintiff contends that the ALJ did not provide specific reasons for rejecting the medical evaluations provided by Dr. Greenwald, Plaintiff's treating psychiatrist, which reported Plaintiff's depression, dysthymia, and Global Assessment of Functioning ("GAF") results over a treatment period of one year. *Id.* at 19-20.

Next, Plaintiff contends that the ALJ did not give enough weight to the medical opinion evidence provided by Dr. Urquhart, Plaintiff's treating orthopedist, due to its inconsistencies with other physicians' conclusions.   Plaintiff argues that the ALJ failed to employ the proper analysis of Dr. Urquhart's findings or to provide a conclusion sufficient enough to enable a reviewing court to determine whether the rejection was improper. *Id.* at 21.   Plaintiff further argues the ALJ also did not employ the analytical test outlined in §§ 20 C.F.R. 404.1527, 416.927 which provide specific guidelines for determining the weight of medical evidence. *Id.* at 21-22.

Third, Plaintiff claims that the ALJ failed to properly evaluate Dr. Milazzo's medical evidence.   The Plaintiff asserts that the ALJ improperly held that Dr. Milazzo's Residual Functioning Capability evaluation was consistent with the performance of full sedentary work.

*Id.* at 24.  Plaintiff argues that Dr. Milazzo's finding that Plaintiff's impairments prohibited her from working a forty-hour work week, required the ALJ to hold that Plaintiff was disabled.  *Id.* at 24-25.

Plaintiff further claims that the ALJ improperly placed too much weight on Dr. Bustos' medical evaluation as a non-examining state agency physician.  *Id.* at 25.  Plaintiff argues that the ALJ cannot afford such an evaluation great weight when it conflicts with a claimant's treating physician's conclusion.  *Id.*

Plaintiff's fifth claim asserts that the ALJ committed reversible error by failing to make a proper credibility finding in evaluating her subjective complaints pursuant to SSR 96-7P.  *Id.* at 26.  Finally, Plaintiff argues that the ALJ failed to obtain the testimony of a vocational expert after determining that she could perform unskilled sedentary labor.  (R. at 28.)

1. ***The ALJ Failed to Address Medical Evidence Related to the Plaintiff's Mental Impairments.***

Plaintiff claims that the ALJ erred at step three by not properly weighing medical evidence related to her mental infirmities.  As a general matter, 20 C.F.R. §§ 404.1527(b) and 416.927(d)(2) state that in evaluating a claim for SSI, the Commissioner "will consider the medical opinions in your case record together with the rest of the relevant evidence we receive . . . [and] will always give good reasons in our decision for the weight we give your treating sources opinion."  Pursuant to the Administrative Procedure Act, which governs administrative adjudications in general, an ALJ must create a judicial record showing, "the ruling on each finding, conclusion, or exception presented.  All decisions . . . shall include a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record."  5 U.S.C. § 557(c)(3)(A).  Applying this statutory provision to the disability claims context, an ALJ's findings "should be as comprehensive and

analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)(quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). Specifically, the Third Circuit has mandated that, "we need from the ALJ not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if the significant probative evidence was credited or simply ignored." *Id.*

The record in the current case demonstrates that Plaintiff sought treatment for depression and anger management starting in October 2008. (R. at 233.) The medical records submitted by the Plaintiff included therapy notes detailing Plaintiff's physical infirmities, her inability to properly care for herself or her children, along with the frequency of the sessions and prognosis for future growth and development. *Id.* at 233-83. The documentation also described Plaintiff's pharmacological treatment regimen under a psychiatrist's care. *Id.* at 268-83. Plaintiff's treatment included numerous prescriptions for antidepressants and other medications designed to address secondary depression-related symptoms. *Id.* These notations briefly addressed Plaintiff's prognosis and reflected Plaintiff's own assessments that these symptoms resulted from her arthritic knees. *Id.*

The ALJ's decision does not discuss the medical evidence related to Plaintiff's mental health treatment and it does not indicate why her mental health impairments were not severe, pursuant to step two of the disability analysis. (*See* R. at 13.) The Court notes that while the ALJ found that Plaintiff was able to independently complete her daily activities, although at a slower pace, he did not address the Plaintiff's mental health records. (R. at 15.) To the extent

that the ALJ did not reference or discuss the Plaintiff's mental health impairments and the records submitted in support of those impairments, the Court remands for a review of the record on the issue of Plaintiff's alleged mental health impairments.

### 2. *The ALJ Properly Evaluated Plaintiff's Primary Treating Physician's Evidence.*

In making his determination, an ALJ weighs medical opinions according to the guidelines in 20 C.F.R §§ 404.1527 and 416.927(d). In evaluating the opinions of a treating physician, an ALJ considers several factors including "(1) the relationship between the doctor and the claimant, (2) the supportability of the doctor's opinion, (3) its consistency, (4) any specialization of the doctor, and (5) any other factors the court chooses." *De La Cruz v. Astrue*, No. 10-4458, 2011 WL 3502360, at *8 (D.N.J. 2011) (citing 20 C.F.R. § 416.927(d)). The ALJ will give a treating physician's opinion controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2).

A statement by a medical doctor that a claimant is "disabled" or "unable to work" is not determinative in the Commissioner's finding. 20 C.F.R. § 404.1527(e)(1). These determinations are "reserved to the Commissioner . . . because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203 n.2 (3d Cir. 2008).

Plaintiff argues that the ALJ improperly rejected Dr. Urquhart's opinion that Plaintiff could not perform sedentary work. (Pl. Br. 21.) In his decision, the ALJ concluded that "the determination by Marc Urquhart, M.D. . . . that the claimant was totally disabled and can only sit two hours in an eight-hour workday, is inconsistent with the doctor's other conclusions (Exhibit 8F)." (R. at 16.)

For example, an MRI of Plaintiff's left knee showing only a small grade intrameniscal tear, small joint effusion, and grossly intact ligaments, suggestive of mild chondromalacia patella. (R. at 165.) Furthermore, according to records from Dr. Urquhart dated January 2006-February 2008, his treatment has been largely conservative. With the exception of two left knee arthroscopies which occurred several years apart, Plaintiff's treatment has been non-invasive. *Id.* at 185-218. While Dr. Urquhart recommended that Plaintiff wear a lateral buttress brace on her right side, it appears from the record that Plaintiff did not consistently wear the brace, (*Id.* at 218), and that she could walk without any assistive devices, (*Id.* at 173). Regarding Plaintiff's left knee, her physician had administered corticosteroid injections in November 2008, but required Plaintiff to follow up only as needed. *Id.* at 192.

Furthermore, based on the findings of the consultative examiner, Dr. Rustagi, Plaintiff could walk on her toes, her gait was heel-to-toe with good swing phase and foot clearance, she was able to walk at a reasonable pace and did not use an assistive device. (R. at 170-73.) Plaintiff's report of her daily activities is also inconsistent with Dr. Urquhart's conclusion. She stated that she takes care of her two children, goes grocery shopping, takes public transportation and completes housework. (R. at 39, 41, 110, 111-13, 119.) Based on the foregoing, the ALJ determined that "there are no medical findings consistent with being unable to sit for six hours during a normal workday." (R. at 15.) As such, the ALJ concluded that Dr. Urquhart's conclusion did not require significant weight. Therefore, the Court finds that the ALJ gave adequate weight to the treating physician's findings.

### 3. *The ALJ Properly Analyzed Medical Opinion Evidence Provided by an Independent Medical Examiner.*

Pursuant to SSR 96-8p, the Social Security Commissioner assesses Residual Functional Capabilities as "an individual's ability to do sustained work and mental activities in a work

setting on a regular and continuing basis. A "regular and continuing basis" means eight hours a

day, for five days a week, or an equivalent work schedule." SSR 96-8p. When a physician

determines that a claimant's RFC falls below the full range of sedentary work such an

assessment does not automatically indicate that the individual is disabled. As SSR 96-9p states:

> A finding that an individual has the ability to do less than a full range of sedentary work
> does not necessarily equate with a decision of "disabled." If the performance of past
> relevant work is precluded by an RFC for less than the full range of sedentary work,
> consideration must still be given to whether there is other work in the national economy
> that the individual is able to do, considering age, education, and work experience.

Thus, a claimant who cannot perform the full range of sedentary work is not necessarily disabled

under the current Social Security analytical framework.

In the current case, Dr. Milazzo opined that, "it is obvious given her knee problems,

[Plaintiff] will have difficulty sitting, standing, walking, navigating stairs, inclines, declines,

squatting, kneeling crouching, etc." (R. at 227.) Dr. Milazzo further indicated that sitting is

impacted by Plaintiff's knee impairments to such a degree that she must periodically alternate

between sitting and standing to relieve her pain and discomfort. (R. at 229.)

However, the ALJ concluded that Plaintiff could engage in sedentary work (such as

sitting) that did not require the use of her knees or involve significant weight-lifting activities.

*Id.* The ALJ's conclusion is consistent with Dr. Milazzo's other assessments showing that

Plaintiff is in fact capable of sedentary work. He found that Plaintiff's cervical and

thoracolumbar spines were essentially normal, with functional ranges of motion and without

discomfort. (R. at 225.) Her joints were nontender, her sciatic notches were negative, and

straight leg raising was negative. *Id.* She had full strength, reflexes, and ranges of motion in her

upper extremities. *Id.* She had full range of motion in her hips and ankles and her right knee

tested at four out of five in strength. *Id.* Therefore, even though Dr. Milazzo concluded that the

Plaintiff is unable to work, his other findings are consistent with the ALJ's conclusion that the Plaintiff can perform sedentary work.

Furthermore, the ALJ found that even though Plaintiff can perform sedentary work, she does have some limitations.  He concluded that she cannot climb, kneel, or crawl and can only occasionally balance, stoop, or crouch.  (R. at 14.)  Thus, the Court finds that the ALJ properly analyzed Dr. Milazzo's opinion.

### 4. *The ALJ Properly Treated the Consultative Physician's Evidence*

Pursuant to 20 C.F.R. § 404.1527, the Commissioner evaluates every medical opinion that is received and considers the following factors in determining the emphasis given to that particular medical evidence: examining relationship, treatment relationship, length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.  20 C.F.R. §404.1527(b).  When weighing opinion medical evidence provided by a state medical consultant, "the administrative law judge will evaluate the findings such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(f)(2)(ii).  Like other medical opinion evidence in these cases, the ALJ must explain the weight given to such opinions unless they are characterized as controlling.  *Id.*  If the consultant physician's testimony conflicts with the evidence submitted by the claimant's treating physician, the ALJ is not allowed to credit the consultant's work. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008); *see Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986).

Here, Plaintiff argues that the ALJ gave too much weight to the state agency physician,

Dr. Bustos, who did not actually examine the Plaintiff. (Pl. Br. at 25.) The ALJ's decision, however, instead referred to the evaluation provided by Dr. Rustagi (Exhibit 3F), who examined Plaintiff prior to providing an opinion. (R. at 15-16; 169-174.) Even if the ALJ did rely on Dr. Bustos's evaluation, he also considered the entire record, which was consistent with Dr. Bustos's ultimate conclusion. The ALJ not only discussed Dr. Rustagi's findings, but also those of Dr. Urquhart and Dr. Milazzo as well as the Plaintiff's own testimony regarding her daily activities. (*See* R. at 15-16.) The totality of this evidence supports a finding that Plaintiff is capable of performing sedentary work.

### 5. *The ALJ Properly Analyzed Plaintiff's Subjective Complaints*

The Court now addresses Plaintiff's claim that the ALJ improperly analyzed her subjective complaints. Similar to its medical evidence evaluation, the Commissioner considers all of the claimant's symptoms, including pain, and the extent to which those symptoms are consistent with the medical evidence presented. 20 C.F.R. § 416.929(a). Relevant factors considered include:

> Daily activities, location, duration, frequency, and intensity of your pain or other symptoms, precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; treatment, other than medication, you receive or have received for relief of your pain or other symptoms; any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(i-vii). The Administration clearly indicates that its consideration of the claimant's subjective complaints does not alone establish disability. 20 C.F.R. §416.929(a).

SSR 96-7p outlines the analysis that an ALJ should undertake when evaluating such subjective complaints. In particular, the statute stipulates:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment

than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

SSR 96-7p(3).   The ALJ analyzes the claimant's credibility by examining the record in its entirety – including medical evidence. SSR 97-7p(4).  The ALJ is also prohibited from making a single conclusory statement that the claimant's subjective complaints have been considered or are not credible. SSR 97-7p(4).  The ALJ's holding must contain a specified rationale explaining to the claimant the weight afforded to her complaints. SSR 97-7p(5).

At issue in the current case is the conflict between Plaintiff's claim of total disability and the ALJ's finding that her subjective complaints were inconsistent with that claim.  (R. at 15.) Our case law mandates that the ALJ must give the Plaintiff's pain complaints serious consideration. *See Burns v. Barnhart*, 312 F.3d 113,129 (3d Cir. 2002).  However, the ALJ can reject Plaintiff's complaints if found to not be credible.  *Schaudeck v. Comm'r. of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  The ALJ's holding demonstrates that he gave Plaintiff's pain complaints serious consideration.  The ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 15.)  He then traced Plaintiff's total disability claim from January 2005 noting that the medical evidence did not reveal debilitating limitations specifically highlighting that none of the medical findings were consistent with this party's potential inability to sit for six hours during the course of a normal workday.  *Id.*  The ALJ then indicated that he applied the analysis under 20 C.F.R. §§ 404.1567, 416.967 revealing that Plaintiff possessed the

ability to perform sedentary work including the ability to lift objects up to ten pounds and sitting six hours in an eight hour workday. *Id.*

The ALJ's opinion demonstrates that he considered the impact that Plaintiff's impairments had on her daily activities. The opinion cites to Plaintiff's testimony, which stated that she is able to prepare her two school-age children in the morning, go grocery shopping, and is able to clothe and bathe herself while recognizing that these activities are conducted at a slower pace. *Id.* The ALJ also noted that Plaintiff undertakes such activities without assistance and lives independently. *Id.* The ALJ conducted a thorough analysis that adequately considered Plaintiff's subjective complaints along with the rest of the medical evaluations included in her file. Such an analysis comports with the ALJ's decision that the Plaintiff's subjective complaints are inconsistent with a claim for total disability.

The ALJ reviewed the record when examining Plaintiff's subjective complaints. (R. at 15-16.) The ALJ acknowledged that Plaintiff's disabilities limit her to a degree and supported that conclusion with a proper explanation and citations to the record where appropriate. *Id.* Because such a determination is substantiated, the Court upholds the ALJ's analysis of Plaintiff's subjective complaints.

### 6. *The ALJ Failed to Properly Consult a Vocational Expert*

The Plaintiff's final claim alleges that the ALJ improperly failed to consult a vocational expert under step five of the analysis. The final step of the Social Security Administration's five-step process requires the Commissioner to determine whether the claimant can perform other work consistent with his medical impairments, age, education, past work experience and RFC. 20 C.F.R. § 404.1520(g) and § 416.920(g). The Regulations make clear that a limited burden is shifted to the Social Security Administration to provide evidence that demonstrates that

other work exists in significant numbers in the national economy that the claimant can do.

20 C.F.R. § 404.1512(g) and § 416.912(g).

The Regulations establish that limitations are exertional if they affect the ability to meet the strength demands of a job and include sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a(b). By contrast, limitations are non-exertional if they affect only a claimant's ability to meet demands of jobs other than strength demands. 20 C.F.R. § 416.969a(c). Non-exertional limitations include difficulty functioning due to anxiety or depression, difficulty maintaining concentration, difficulty seeing or hearing, and difficulty crouching. *Id.*

In the Third Circuit, the law regarding appropriate use of the grids is clear. As explained by the Court of Appeals:

> The grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus . . . the practice of the ALJ determining[,] without taking additional evidence[,] the effect of the nonexertional impairment on residual functional capacity[,] cannot stand.

*Sykes v. Apfel,* 228 F.3d 259, 270 (3d Cir. 2000). In order to meet this burden of proof, the Third Circuit has established that the "Commissioner must present . . . the testimony of a vocational expert or other similar evidence, such as a learned treatise." *Sykes,* 228 F.3d at 273. In the absence of such evidence, "the Commissioner cannot establish that there are jobs in the national economy that someone with claimant's combination of impairments can perform." *Id.*

In *Poulos v. Commissioner of Soc. Sec.*, 474 F.3d 88, 94 (3d Cir. 2007), an ALJ's decision not to consult a vocational expert on the grounds that the claimant's occupational base was not impacted by his exertional and non-exertional impairments was reversed. In that case,

the court specifically examined the ALJ's determination that the claimant's need to use chairs specifically designed to support his weight did not significantly erode his sedentary occupational base since sturdy chairs are readily accessible where sedentary work is done. *Id.* The court found no evidence in the record supported such a claim and held that the ALJ had improperly applied his own opinion in place of consulting a vocational expert. *Id.* at 95. The court held that "[t]he ALJ's reliance on the Guidelines in the presence of Appellant's nonexertional limitations constitute[d] reversible error under [*Sykes*]." *Poulos* 474 F.3d at 94. Similarly, this Circuit has held that when application of the grids is improper, other methods can be used to prove the claimant is capable of performing other jobs. *Jesurum v. Secretary,* 48 F.3d 114, 121 (3d Cir. 1995) ("Preferably, this is done through the testimony of a vocational expert."); *Washington v. Heckler,* 756 F.2d 959, 967 (3d Cir. Pa. 1985) (finding reliance on the grids to be insufficient and some other evidence needed when the claimant suffers from both exertional and non-exertional impairments).

In assessing Plaintiff's residual functional capacity, the ALJ concluded the Plaintiff has the RFC to perform "sedentary work," but found that the Plaintiff "cannot climb, kneel or crawl; can only occasionally balance, stoop or crouch, and must avoid concentrated exposure to extreme heat or cold, wetness, humidity, vibrations, and hazards." (R. at 14). Pursuant to 20 C.F.R. § 404 1569(c)(1), these limitations are considered "non-exertional." Despite the existence of these impairments, the ALJ at step five, without the testimony of a vocational expert, or other similar evidence, found that Plaintiff could perform jobs that exist in significant numbers in the national economy. (R. at 16). Specifically, the ALJ found that under the framework of grids, a finding of "not disabled" would be appropriate if the Plaintiff had the RFC

to perform the "full range of sedentary work." *Id.* The ALJ went on to state that "the additional limitations have little or no effect on the occupational base of sedentary work." *Id.* at 17.

Here, where the ALJ found certain limitations, the assistance of a vocational expert is required. *See Hall v. Comm'r of Soc. Sec.,* 218 Fed. Appx. 212, 216-17 (3d Cir.2007) (requiring, on remand, vocational evidence "to determine whether [claimant's] limitation to 'simple, repetitive tasks' further erodes the occupational base for unskilled light work); *see also Sykes,* 228 F.3d at 266 (finding that the Commissioner cannot on his own determine whether or not a claimant's non-exertional limitations will have an impact on his occupational base); *McGill v. Comm'r of Soc. Sec.,* 2010 U.S. Dist. LEXIS 2508 (D.N.J. Jan. 13, 2010) (remanding where an ALJ found that the claimant's depression had "little or no effect on her occupational base of unskilled sedentary work"); *Billingsley v. Comm'r of Soc. Sec.,* 2009 U.S. Dist. LEXIS 88634, at 13 (D.N.J. Sept. 25, 2009) ("[A] vocational expert must be consulted ... even where the ALJ has concluded that the claimant's non-exertional limitation is not significant or will not substantially diminish the occupational base, because the ALJ is not in the position to make such a determination about the import of a non-exertional limitation.").

Under the circumstances here, the Commissioner must utilize a vocational expert, or other similar evidence, in order to determine whether there are jobs that exist in significant numbers in the national economy that claimant can perform despite her impairments. The ALJ's failure to consult with a vocational expert requires this Court to remand on this issue.

## III. CONCLUSION

The Court affirms the ALJ's decision in part and remands for the ALJ to set forth his reasons for finding that Plaintiff does not have a severe mental health impairment. In addition, the matter is remanded for the ALJ to utilize a vocational expert, or other similar evidence, in

order to determine whether, despite Plaintiff's impairments, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  An appropriate Order accompanies this Opinion.

Dated: December ___21___, 2011

HON. CLAIRE C. CECCHI
United States District Judge